2014 Act. Rule page 5-9. People of the State of Illinois plaintiff Pelley v. John Tsiamas, defendant of Pellant. Arguing on behalf of the defendant of Pellant, Attorney Mr. Brian Gomez. Also arguing on behalf of the defendant of Pellant, Attorney Mr. James McClain. Arguing on behalf of the defendant of Pelley, Attorney Mr. Colin Dodge. Thank you, Craig. Mr. Gomez. Yes, Your Honor. With that said, we are here today because of an appeal regarding a petition to rescind. This is a petition to rescind a summary suspension in connection with a DUI arrest. The issue that's really before the court today is whether the trial court erred in declining to impose any sanctions against the state for failing to turn over a booking video, a certain video that was made that was produced in connection with the arrest. At the time prior to actually engaging in the statutory summary suspension hearing, the defendant did make a request for the video. The video was not tendered over, and so there was an oral motion made for sanctions. The trial court then declined that oral motion for sanctions. The petition proceeded on its merits, and this appeal ensued. What is our standard of review? Your standard of review, Judge, would be de novo, is my understanding, Your Honor. And, I mean, you're arguing that the trial court should have imposed sanctions, but there's a first step, and that would be to find a discovery violation, correct? That is correct, Your Honor. And so really, if I could back up a little bit, that is the issue, Judge, that really boils down to exactly whether there was a discovery violation, and if so, whether that discovery violation was so prejudicial to the defendant such that it merits a new hearing. Whose burden was it to prove a discovery violation when one is alleged? The burden would actually fall, Judge, upon the petitioner, that is the person, the party that seeks the sanction, that is seeking the sanction from the court. So how did you prove a discovery violation here? So in this court, or in this particular case, the way in that we proved that was through the timeline. The timeline indicates that the arrest occurred on February 14th, 2014. Just within six days thereafter, there was a request that was made pursuant to Supreme Court Rule 237. It was pursuant to the 237 request to produce at the summary suspension hearing. And in that 237 notice to produce, we did request a copy of any and all videos, including the booking room video. That request, again, was made pursuant to a 237 notice to produce, which was tendered, hand-delivered to the state's attorneys by their own acknowledgment, through their own admission, on the 20th of February, again, six days following the arrest. Thereafter, we renewed our request in court, in trial court. I believe the date was March 27th when we renewed our request. And then a subpoena was also issued, subsequently, a subpoena due to Tecum on April 1st, 2014. When was the video destroyed? That, I believe, is a question that was never delved into and was never resolved by the trial court. I don't believe that we have a precise date as far as when it was destroyed. Why wouldn't you have to prove that? I mean, in Gladys, they had a letter from the police department saying, we destroyed the video on this date, which happened to be the day before, I think, they were in court or something like that. But the court actually had evidence that was presented by the defendant to show when this video was requested and when it was destroyed. Here, you certainly have evidence of when it was requested. Yes, sir. When was it destroyed? And so if I could just, before I address that, just briefly go back to your first question, which I believe was the standard of review. And the standard of review, if I can correct myself, is actually abuse of discretion because we're talking about a sanction here and we're talking about a trial court denial or request. It was abuse of discretion with respect to the appropriate sanction, but with whether or not there was a discovery violation, it's de novo. Thank you. Thank you. Thank you very much for that clarification. Now, getting back to the question at hand, the parties are all in agreement that the video was destroyed, that it was no longer available. I think the parties are in agreement that the video was in existence. At one point. And it was destroyed. Yes, sir. Now, because the state told you on, I think, the arraignment date that it was destroyed. Actually, that is not correct, sir. We found that it was determined on the following day, which would have been April 23rd, the date of the summary suspension hearing. On March 27th, in fact, sir, at the time of the arraignment, certain documents were tendered, certain discovery was tendered by the state. In fact, indicating that they had been working one on one, presumably with the police department to obtain whatever discovery needed to be tendered over to defense. But as far as the actual destruction date of the video, again, the parties are all in agreement that it was destroyed, that it was no longer available at the time that it was actually required, which was on the date of the summary suspension hearing. The state wouldn't stipulate that it was destroyed, that it was destroyed prior to that six days or after that six day. Correct. I mean, they stipulated that it was in existence at one time. They stipulated it was destroyed. They didn't stipulate that it was destroyed prior to or subsequent to the subpoena or the request. That is. Well, they did stipulate. Well, that is correct. However, there is a stipulation that the state did, in fact, receive a hand-delivered 237 notice to produce, which was just six days after the date of the arrest. However, there has been no finding by the trial court, as my understanding, as far as the exact date when the video was destroyed, why it was destroyed, who destroyed it. Any other circumstances that would possibly relate to perhaps the egregious nature or the negligent nature in which it was destroyed? Let me ask you a question. Is there any statute, local or otherwise, that requires a police department to hold on to a videotape? Specific statute? Well, we do cite one in our brief, which we believe does apply. And that would be. Pardon me. Could you cite these dropping exceptions? Right. 14-3H. So we do cite 720 ILCS 5 backslash 14-3 and then subsection H-15, which provides that it requires a state to preserve recordings until a final disposition and an order from the court. Aren't those all squad car videos, though? I mean, one of them has to do with a Taser. H-10 has to do with a Taser that has a camera on it, so that doesn't apply. So H-10 wouldn't apply. But H and H-5. H talks about, H is the one that talks about the onboard, and everything seems to flow from the onboard until you get down to the Taser, correct? That is correct. And so. And so this isn't onboard. And so besides this section that, it was our position that subsection H-15 would apply as it relates to the booking group video. But besides that, if I can get back to the actual question, was there a state statute or a local rule? There may not be anything per se in writing a statute or rule, but again. Is it a custom and a practice? I'm sorry? Is it a custom and a practice? In civil practice, in fact, pursuant to the developed law and theory of spoliation of evidence, in fact, we know that when in a civil proceeding a party is under notice or should be under notice, circumstances under which a party should be under notice, that something will be used of evidence at a trial or some sort of evidence at your hearing. The party is then obligated to preserve that, whatever that may be, that document, that written instrument, that video, whatever the case may be. And so this being a civil case, being a civil proceeding, it's our position that, first and foremost, this was something a little bit out of the ordinary insofar as the field sobriety tests were performed at the police station. As opposed to out in the field, which is where they're usually performed. And so therefore, the performance on those field sobriety tests clearly is relevant to the petition to rescind the summary suspension. Our position is that the standard that should have been applied here really is a standard for discovery in civil cases. 201B1. Yes, Your Honor. So it's anything that is relevant to the subject. Sure. It's anything that can make a fact of consequence more or less likely, more or less possible, that is. And so that's our position as far as what was discoverable. But you do make several references in your brief, I think, to the fact that the police department would maintain these records for this video for 30 days. But you don't have any, you know, that doesn't relate to the 201. It just relates to that 30 days. Where does that come from? And I'm sorry. That they would maintain these tapes for 30 days. Where does that figure come from? I believe that that was a policy, a village of Bensonville policy. And what we find it to be is a customary policy where most videos, squad cam, booking room videos are generally destroyed within about 30 days of production. But we don't have anything in the record. In the record. In the writing. This is just something that was presumed? I believe this was actually something that was brought up by the state during the time of one of the hearings. And it was indicated at that time that their policy was to erase these after every 30 days. The record that I saw didn't bear that out. The record that I saw indicated that you mentioned that they keep these for 30 days. And then the court said, did the party stipulate that there's a 30 day window, that Bensonville keeps these videos as a general rule? I'm sorry, it wasn't you. Mr. Milan. Mr. Milan. Said yes, Your Honor. And then the court said, is that the state's understanding? And the state's attorney, Mr. Mincer, said, Judge, I hesitate to stipulate to that point. There was never a stipulation from the state or even a comment from the state that Bensonville kept these for 30 days. And so, and if that is the case, well, then I stand corrected. It's been our position from standard practice, from the custom and usage from standard practice, that generally, by and large, most of these videos are destroyed after 30 days as a custom of policy. And that is in May, on the sixth day after the arrest, you file a request for this document, and it goes to the state's attorney. And it is hand delivered to the state. And the state is obviously going to prosecute this action, both the criminal and the civil. Absolutely. All right. And so they have notice on or about the sixth day. What is their obligation, if any, to contact Bensonville or any entity that they're representing? Well, it would be the same obligation that they would have to contact Bensonville or any other party that they're representing for purposes of obtaining, for instance, the police reports, the influence in drug alcohol reports, any other evidence that they plan on using against the defendant at the time of trial or hearing. In this case, of course, we're talking about the civil proceeding. We're talking about the civil hearing. And, again, we're talking about a whole different standard as far as what is discoverable. We're not trying to open up a Pandora's box here. We're saying this under these specific circumstances of this particular case where the field sobriety tests, which are generally performed on the field, were performed at the police station. There is a 237 notice to produce at the hearing contesting suspension tenured to the state within six days of the arrest, specifically requesting this video with these field sobriety tests on, which also would have depicted the reading of the warning to motorists or the lack thereof, which was also an issue that went directly towards the petition to rescind. We're saying under these particular circumstances, it was not only relevant, it was discoverable by civil standards and pursuant to the Illinois law as it relates to spoliation of evidence, quite frankly. Under all these circumstances, the state knew or should have known that this video was going to be an integral part of evidence as to the petition to rescind summary suspension. They certainly knew within six days. They had to have known within six days. Well, as it turned out, at the time of the summary suspension hearing, they didn't have it, but the officer testified. And on that basis, the summary suspension petition was denied, correct? That is correct. And what we are saying here to the esteemed panel is that this was the best evidence. This was the only objective evidence that was, in fact, available to one of the parties that could have been preserved, that could have been turned over by the state. For all the same reasons that CLAD is cited for purposes of finding that a squad cam video is generally admissible and discoverable in a criminal setting, that is, the enhancement of the truth-seeking process, enabling us attorneys to better prepare for the actual hearing itself, to eliminate the surprise, the possibility of surprise, or simply to promote the expeditiousness and final determination of the controversies before the court. For all these reasons, all these policies underlie the basis of reason why the state was also required to tender this particular booking video in connection with the summary suspension hearing. What was the reason for the subpoena? And this is significantly after February 20th. This is significantly afterwards, and it was simply another means, a different means of issuing, of requesting the video, which after looking through the discovery, initial discovery, which was tendered back on March 27th, we determined that there was no such booking room video tendered. You aren't going, though, as far as CLAD is here, you're just saying to us, this needs to go back to the trial court in order for the trial court to determine whether or not there was indeed a discovery violation, and then, if they say yes, then determine the sanction, correct? And then determine the sanction, that is correct, and apply that to the summary suspension hearing. And so we're not trying to, this does not relate to the criminal aspect of the case whatsoever. This is strictly speaking to the civil proceeding. Correct, correct. And you're not saying, and I don't know if I need to go here, but you're not saying that merely because the video was destroyed, the best and only sanction is to preclude the police officer's testimony? Absolutely not, and that is a great point. The trial court absolutely had its discretion, and I don't have to tell this panel this, but the trial court had its discretion to tailor any type of sanction that it found that it deemed fit for the particular discovery sanction that we strongly believe occurred in this case. It did not have to go along with what we requested. For instance, this trial court could have said, we'll draw a negative inference with respect to one of the three field sobriety tests, or two of the three, or three of the three, or just a warning to motorists. But again, this was the only objective evidence it would have told us with specificity and without possibility of lying what was said, who said it, how the parties, not only the arrestee, but also the arresting officer, their words and their conduct, which was all relevant for purposes of the petition. Anything further? Thank you. Thank you very much. Thank you. I believe you're Mr. Diamond is going to. No. I'm sorry. Mr. McLean. Mr. McLean is my colleague. I'm sorry. Thank you very much. Switching your calls up on you. Mr. Diamond. Good morning, sir. Good morning. My name is Colin Diamond. I represent the DuPage County State's Attorney's Office. Really, this all boils down to one thing. Defense counsel was just up here, and he's asking all of you to make a lot of assumptions. He wants you to assume that there was a video that recorded the field sobriety test and the warning of motorists. He wants you to assume. But didn't you stipulate that there was indeed a video? Not that there was a video that recorded the field sobriety test and the warning of motorists, no. We stipulated there's a booking room video, but never that the warning to motorists and the field sobriety test were recorded on that video. He wants you to assume that that video was destroyed. There's no evidence whatsoever that that video was destroyed. Did you produce it? Or did the police produce it? The police did not produce a video because we don't even know if there was a video. If you look at the response to the defense subpoena that was issued on April 1, 2014, it's on C-36. It says, in response to your subpoena for booking room and police station videos, this department has no recordings. That's what it says, no recordings. The first time we ever hear about a booking room video is on April 24, 2014, which is the second court date. Wait a minute. There was a discovery request on February 20th. It talks about any videos. What does that mean to you? But then also in the request, it also requested any chemical tests, which was in paragraph 3. It also requested samples, which was under paragraph 4, which is on C-14. On C-13, it was a boilerplate motion. He basically threw his net out into the ocean and expected to catch a whale. That's what he was looking for. Nothing to indicate that this was a time-sensitive material. Nothing to indicate that this was the functional in-squad carbon footprint. But now you know that he wants some things. What is your obligation? Either do you have an obligation to preserve it, pending argument, or do you just say, oh, we'll find out what happens? Our obligation at that point was to turn over the materials that we had on that first court date. His obligation was to serve the Bensonville Police Department with the preservation order and to serve them with that notice of preservation. Why? You represented Bensonville. Why? There's two separate entities. And if he's arguing this is a civil procedure, he has to go and he has to serve the party that holds the evidence. Well, who represents them at the summary suspension hearing? We represent the Bensonville Police Department. But it's his motion going forward. He has to prove that his license should not have been suspended. That's his burden. So he has to prove that there was no reasonable, articulous position to pull him over. There's no probable cause that his license should be suspended. But if there's any discovery shenanigans with the police department and you step it before the trial court, who is the trial court going to hold responsible for those discovery sanctions that the state's attorney knew about, whether it be a criminal matter or whether it be a summary suspension hearing? Because I know what I would say if I were the trial court and you came up to me and said, oh, this isn't criminal, so Schmidt doesn't apply, or this is the, hey, it's the police department's fault. I know what I would say to you. What do you think the trial court's going to say to you? Well, the trial court has to say there's no evidence of the sanctionable or discovery violation here. That's what they're going to say. And there was no evidence of a discovery violation. Well, all right. Well, here's what I'm going to ask you. What have you done to answer this request for discovery? On the first day, we tendered discovery. On the February 20th date, what did you do to respond to that discovery request? We tendered discovery on the first court date of March 27th. It was on the record page 2. Not everything. Huh? Not everything. Well, we didn't know that until February 24th or March 20th, April 24th, 2014. Did you ask somebody? Did you ask the police department? You're representing the police department. You're not going to ask them what they have in answer to this request? We provided them with what we had. Did you go to the police department and say, give us any videos you have of this arrest? Give us any results you have of blood, of breath? Did you ask them for anything else with respect to this arrest? We asked them for what was part of the arrest, and then we tendered that discovery to the defense counsel. That's what we did. Everything that we tendered was what we had. That's what we received. So you received it from the police department. We received it from the police department. We tendered that on that first court date of March 27th. So the police department is going to tender you the reports in a DUI once they make the arrest and once it's been charged. Yes. You don't have to ask for that. They're going to tender it to you anyway. Yes. So after they tendered you the police reports, did you go back to the police department and say, plus give us any additional discovery that you may have, i.e. videos, i.e. blood, breath, alcohol, anything else that you have? Did you do that? We did not do that because there was no specific request for that on that first court date. He announced receipt of all the materials. He never brought up that there was anything missing, and there's no record that there was anything missing. So, counsel, if you're going to prosecute a murder case, are you going to rely on what the police department gives to you once that case is charged as a murder? No, but when there's a specific request, we're going to ask them for it. There was no specific request here. There was nothing to indicate in the notice produced that this was time sensitive. There was nothing, again, on that first court date, he doesn't say anything. He says on page 2 of the record, acknowledge receipt of materials, and on page 3 and 4, he kind of says, oh, judge, wait, there's one more question. Oh, nothing. Don't worry about it. There's nothing to show. Do you rely upon the prosecutor to tender the discovery that they intend to use in a prosecution? Absolutely, but we didn't intend. We don't even know if there was a video. We don't even know if the booking room video recorded these events, so why turn over something that doesn't exist? Why not ask? Yeah, it's easy if you don't ask. You can always say, pfft, I didn't know. Well, this was a unique situation. Why? And I think that's a touchstone. Why? Because field sobriety tests aren't normally performed back in the booking room video, and I think the trial court makes that clear. On page 103 of the record, in the motion to reconsider ruling, it says, hey, there are a lot of things that happen in the booking room video that have nothing to do with these cases. The officer picking whacks out of his ear. There are a ton of things. So if you say that we have to look for everything, then you're saying that everything the defendant touches in that room that we have to turn over to defense, and that's not our burden. That was not what was stated. It's not your burden until they ask you for it, and once they ask you for it, once it's requested, then it's your burden to go to the police department and say, hey, they're asking for this. Do you have it? But it wasn't requested. It was never requested. There's no proof that it was ever requested. Six days thereafter, they didn't request. But I want you to look at Claddis here, because in Claddis, they had an all-motion discovery in addition to the notice of prejudice. Okay, I want you to look at People v. Parks, which is a case that I recently published, which says Claddis is not totally correct, in my humble opinion. It's People v. Parks, 2-14-0080. And again, in Parks, what I basically said is it's the same thing as counsel is saying here. You might have a discovery violation, but the sanction doesn't have to be as it was in Claddis, which the trial court said in Claddis. Anytime you have a discovery violation, then the state doesn't get to use any of that testimony. So I'm helping the state out here, counsel. I am saying the steps are, is there a discovery violation, number one, number two, and if there is a discovery violation, does the court have to take that response of barring everything? That's what Parks says. So Parks helps you in a prosecution, but in this case, when you're violating, basically, the rules, then you want to go the other way. You want to have your cake, and you want to eat it, too. So now you're going to cite Claddis. One of you ever cited Claddis before. Has that ever helped you before? Claddis? We cited this Claddis in our brief. Yes, I know. But in a prosecution of a DUI, is the Claddis going to help you? Yes. How? Well, Claddis had, again, there was evidence of what was on that video, and there was a video. If you look at that first court date of June 3, 2008, the officer Gasky from the North Dakota Police Department testified specifically that there was a video that recorded the stop. Does it matter what was on the video when the video was requested? Absolutely, because booking room videos aren't required to be turned over. They're outside the scope of Schmidt. This isn't criminal. This isn't a criminal case. This is a civil case. This is a civil case within a criminal case. It follows civil practice. So if you have a misdemeanor case and there is a video in the misdemeanor case, and the state says to you, hey, there's a video in the booking room of my client, you're going to say to the trial court, I'm not turning that over. It's outside of Schmidt. Is that what you're going to say? We don't have that evidence here. I understand that, but I'm saying you're relying on Schmidt, and quite frankly, that's insulting to me. So if you're in a trial court situation, in a criminal case, in a misdemeanor case, and there's video known to everyone in the room, you're going to say to the judge, I'm not turning it over, judge, because it's outside of Schmidt. No, we will turn it over if we have it in our possession. There was no video here that we have. We will absolutely turn that over. So if you had asked for it in a timely manner when you got the police reports and you got nothing, and you would ask, is there anything else, and you had it in your possession, you would have turned it over, correct? We would have turned it over. Regardless of whether it was outside of Schmidt. We would have turned it over. Okay, so then Schmidt is kind of a red herring, isn't it? Schmidt also covers material that is routine, that is part of the things that have become. The reason Schmidt was established was because there was a substantial volume of misdemeanor cases filed every day. So if all civil rules applied to that case, then these cases would be bogged down. And I think the court said that the expeditious disposition of these cases would never occur because there would always be these discovery requests. So it set forth the items that were discoverable. Now, CLADIS extended that to routine traffic stop to inscribe videos in response. Because of the statute. But here there is nothing to put us on notice that there was a booking or video. Again, the first time we showed, we had the notice produced, but they had all these other little things that weren't involved in the case at all. Wait a minute. There is a motion for discovery that you received on February 20th of 2014. In number eight, it says any and all digital recordings, including but not limited to any audio, video or DVD recording in existence relating to or concerning the defendant, including but not limited to squad car transmissions, dispatch tapes, squad car video or DVD and the booking room video or DVD and all other recordings of defendant generated at or around the time of the pursuit. You said you weren't asked. You were asked. Why didn't somebody ask if any of these things existed? Because there was no. There was no. We turned over exactly what we had at that point. We're not. We're not the police department. We turned over on that first court date, March 1st. When did it become known or if it ever became known that there was potentially field sobriety testing done on the booking room video? April 24th, 2014. When it was raised by the defendant. That was raised. Is it in the police reports anywhere that that happened? If there are, we do not know. There's no record of it. There's nothing that you've seen in the discovery in this case that shows that there's a booking room video that contains the field sobriety. Field sobriety testing was done in the booking room. Nothing in the record that shows that. Nothing in the police report that says where the fields were taken? If there was, there was the record that shows that fields of right test were in the booking room. They were in the booking room, but not that they were recorded. So we have here fields of right test occurred in the booking room, but we don't know whether or not they're recorded. So if there was, if there even was a video, did it even record the fields of right test? And you know why we don't know if they were recorded? We know. Because we didn't ask. Is it our burden as civil prosecutors? Yes. If you're representing a client, yes, it is. Counsel, you know, typically judges who are hardest on prosecutors are judges who were prosecutors. Anything further? Anything further? No more. Thank you. Thank you. Thank you. May it please the court. My name is James McLean. I represent defendant John Thomas, who's sitting behind us. And I will start with a follow-up to the question. This is a very long motion for discovery, and this is a hybrid proceeding. If you want something, why don't you point it out and make it obvious and tell us why it should be something of relevance, which is the issue in Gladys? Why don't you tell us that? Because your client is telling you things that you know that they don't necessarily know. I mean, you know that there's something you want. Why don't you identify it clearly, not in number eight, but in number one? To answer that question in short, Your Honor, if you look at our 237B notice of abuse, it's number two, where we request that specific DVD. But the motion for discovery is what was tendered on February 20th, which is what Mr. Gomez makes a major production out of. It was hand-delivered. It was received. They stipulated they received it. That's the one that criminal attorneys are going to look at, even though this is a hybrid case. So why don't you ask for it and say why you want it? I understand that, Your Honor. And with respect to the motion for discovery, obviously it would be applicable to the civil matter, but it's mostly applicable to the Gladys and Schmidt discovery that we were talking about, which is inapplicable, really, to this case. What really applies in this specific manner is number two of our 237 request, where in plain sight you read it yourself, Your Honor, on the record, requesting the booking room video. But you don't say why. And there is some confusion, apparently, about why. I mean, I understand that relevance will have to be determined once somebody looks at it, but you have some knowledge as counsel why you want it. You're not going to give up your strategy if you identify that, are you? Well, Your Honor, I don't think it's my responsibility to identify why I want a booking room video because I want to use it at a petition to rescind to substantiate whether my client is telling the truth or the officer is telling the truth. That's way beyond the scope of civil discovery. Counsel, do you think that every booking room video that's ever produced is tendered in a discovery motion? Your Honor, I believe that a booking room video that shows field sobriety tests… And it asks for the booking room video. Clearly, what they refer to as a boilerplate has a lot of different things on it. The kitchen sink, basically. So, you know, many times, every time someone's arrested, they go to a booking room. We all know that there's videos at booking rooms because they videotape these things. We all know they're there. So, does that mean that in every DUI case where someone's arrested and taken to a booking room and they get a boilerplate motion, they then have to call the police department and get the booking room video just to see if the guy's doing anything other than sitting there, you know, immobile? Your Honor, in this day and age, I would say yeah. Really? Because it is the best evidence. That's now to the level of an in-squad video is a booking room where a guy is sitting there being fingerprinted and just sitting there for hours on end waiting for his ride to show up. Well, Your Honor, like I said, we're not trying to expand class. What we're trying to do is if there is an indication in this video, as the state indicates on April 24th that the video does exist… When did you find out that there were potentially field sobriety tests on the booking room video? Or done in the booking room, I should say. Your Honor, I don't know the answer to that question. Was it in the police reports that you received and discovered? I haven't seen anything to indicate that there was a booking room video or there was a mark that said booking room video in existence showing FSTs. Well, then how does this get taken out of the boilerplate that the police department and the prosecutors are never going to turn over every booking room video on every person's arrest in the state of Illinois when it's asked for in a boilerplate motion? Well, Your Honor, I think that we're focusing in on what is relevant. I think that a booking room video is relevant. I agree it's relevant if there's field sobriety tests on it. I'm not going to disagree with that. That makes no sense to disagree with that. The question is, when you find out, wait, my client did field sobrieties in the booking room. I need to get that booking room video. Then you file a specific request for the booking room video or a subpoena or something else saying this is why I need this. Not just along with your other 30 things that you want. And my client did indicate to us that he did his field sobriety test in the booking room video. At what point? When he met with us. When he comes to meet with us and says I did field sobriety tests not in the field but in the booking room. But you don't have a dash cam that shows field sobriety tests here. They don't have dash cam videos in Bensonville. And that's why we're saying that this booking room video is tantamount to a dash cam video, especially if they're specifically transporting our client back to the booking room to do his field sobriety tests, most likely to utilize the camera that is contained within the unit. Was it a nasty night? Well, February 14th probably was cold. Was it inclement so they couldn't do them on the street? Not that I'm aware of, Your Honor. Okay. So you knew something from your client. And that was my point in the beginning. And if you have some knowledge separate and apart from I just want the booking room photo, why, you know, this is civil discovery. And in a civil litigation, there will be objections and there will be this and that. But this is time sensitive. So we can't do it that way. Why can't you be more specific? Your Honor, I guess we could be more specific, but we're not obligated to be more specific. And when we make a request, we're obviously seeking evidence that is relevant in the civil matter. I mean, just the same as if this were in a civil context where we're requesting an X-ray of which a doctor is about to testify to, you know, whether there was cancer or not when he reviewed it. And then all of a sudden, poof, it goes bye-bye. I mean, that's exactly what has occurred in this case. We make the request. They actually acknowledge on April 24th, although the state says they never acknowledged that they had a video, it says, Mr. Minzer, judge, I do believe that a video, I would stipulate that a video did exist. He says that on April 24th. But see, we know that the doctor has some medical evidence on that X-ray that's relevant. We don't know on a regular basis whether this booking room video shows him chewing gum or doing field sobriety and receiving his warnings. That's a significant difference, at least in my mind. Well, I think just in terms of warnings, I believe that the warnings are always given in the booking room. So we know for certain that that's going to be relevant. And it's also a basis of failure to give a warning at a petition to rescind the summary suspension. So warnings are given. That 20-minute warning spiel is not given in the field. It is given in the booking room. Not always, but many times. As your trial partner here argued, you're not here to tell us what the sanctions should have been. You're here to ask us to ask the trial, to remand it, to ask the trial court to determine whether or not there was a sanction. Absolutely right, Your Honor. Anything further? No. Ladies and gentlemen, thank you so much. Gentlemen, thank you for your time and your argument. We will take this case under consideration and run our decision in due course. Have a great day. Please all rise. Court is adjourned.